**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| RICKY EUGENE BROWN, | ) | |
| | ) | No. 6:14-cv-04486-DCN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Kevin F.

McDonald's Report and Recommendation (R&R) that the court affirm the

Commissioner's decision denying plaintiff Ricky Eugene Brown's ("Brown") application

for disability insurance benefits ("DIB").  Brown filed objections to the R&R.  For the

reasons set forth below, the court adopts the magistrate judge's R&R and affirms the

Commissioner's decision.

## I.   BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.    Procedural History

Brown initially filed for DIB on August 13, 2008 alleging an onset of disability

date of July 19, 2006.  Tr. 18.   The Social Security Administration (SSA) denied

Brown's claims initially on January 21, 2009 and upon reconsideration on October 5,

2009.  Tr. 18.  On December 17, 2009, Brown filed a written request for a hearing

before an administrative law judge ("ALJ"), and on August 23, 2010, ALJ Gregory M.

Wilson conducted a <u>de novo</u> hearing on Brown's claims.  Tr. 18.

The ALJ issued his decision on September 30, 2010, finding that Brown was not disabled under the Social Security Act.  Tr. 18–29.  Brown requested Appeals Council review of the ALJ's decision, Tr. 10–11, and submitted additional evidence to the Council.  Tr. 4–7.  The Appeals Council declined to review the decision, making the ALJ's decision the final, reviewable decision of the Commissioner.  Tr. 1–3.  The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Brown's request for review on May 10, 2011.  Brown appealed the ALJ's decision and obtained an order of remand on July 24, 2012.  Tr. 517–47, 548–49.  See Brown v. Astrue, No. 6:11-cv-1500-MBS-KFM, 2012 WL 3029654 (D.S.C. July 24, 2012).   Upon remand, the Appeals Council directed the ALJ to

> Evaluate and consider the objective evidence from Mr. Adams'[s] assessment of the plaintiff's ability to perform fine manipulation with his hands and fingers.
>
> Reevaluate the prior finding regarding the weight given to the opinion of Dr. Tollison in light of the newly produced evidence.
>
> Evaluate and weigh the newly produced evidence from Drs. Worsham and Tollison and to reevaluate and weigh the prior opinions of vocational evaluator Mr. Adams and Dr. Tollison.
>
> Should the ALJ's analysis upon remand continue to Step 5 of the sequential evaluation, obtain additional vocational expert testimony and provide the expert with proper hypothetical questions setting out all of the plaintiff's impairments.

Tr. 550–52, 517–47, 548–49.

On May 29, 2013, Brown and Dr. Alfred Jonas ("Dr. Jonas"), an impartial medical expert, and Karl S. Weldon, an impartial vocational expert, appeared at a hearing

before the same ALJ in Greenville, South Carolina.[1]  On February 20, 2014, the ALJ

issued a decision finding that Brown was not under a disability as defined in the SSA.

Tr. 417–41.  The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied Brown's request for review on September 30, 2013.  Tr. 389–92.

Brown filed this action on November 21, 2014.

The magistrate judge issued an R&R on January 29, 2016, recommending that the

ALJ's decision be affirmed.  On February 17, 2016, Brown filed objections to the R&R,

to which the Commissioner replied on February 24, 2016.

### B.    Brown's Medical History

Brown was forty-two years old on his alleged disability onset date of July 19,

2006 and was forty-seven years old on his date last insured, June 30, 2011.  Brown

completed the eighth grade and later obtained a GED and an associate's degree in

industrial mechanics.  Tr. 453–54.  Brown has past relevant work experience as a

millwright and maintenance worker.  Tr. 440.

The court adopts the R&R's comprehensive description of Brown's medical

history.  Because the question at hand is whether the ALJ properly evaluated the opinions

of the treating physicians, and because neither party contests the magistrate judge's

outline of Brown's medical history, the court will dispense with a lengthy recitation of

thereof.

---

[1]    Dr. Jonas appeared via telephone.  R&R 2, n.1.

### C.    ALJ's Findings

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

To determine whether Brown was disabled, the ALJ employed the statutorily-required five-step sequential evaluation process.  At step one, the ALJ found that Brown did not engage in substantial gainful activity from the alleged onset date of July 29, 2006

to the date of last insured, June 30, 2011.  Tr. 419.  At step two, the ALJ found that

Brown suffered from the following severe impairments:  degenerative disc disease of the

lumbar and cervical spine (polyarthritis), degenerative joint disease of the hips and right

shoulder, depression, anxiety, dysthymic disorder, and somatoform disorder.  Tr. 419–

420.  At step three, the ALJ found that Brown's impairments or combination thereof did

not meet or medically equal one of the impairments listed in the Agency's Listing of

Impairments.  Tr. 420.  Before reaching the fourth step, the ALJ determined that Brown

retained the residual functional capacity ("RFC") to perform sedentary work with several

restrictions.  Tr. 423–24.  Specifically, the ALJ found that Brown can:  occasionally lift

or carry 10 pounds, frequently lift or carry 10 pounds, stand 2 of 8 hours, walk 2 of 8

hours, and sit 6 of 8 hours.  Tr. 423.  The ALJ also found that Brown can frequently

climb, occasionally climb ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and

crawl, can frequently push and pull with his lower extremities, and can frequently handle,

finger, and reach overhead.  Id.  Additionally, the ALJ found that Brown must avoid

moderate exposure to hazards and can sustain work at simple 1-2 step tasks and can have

occasional public contact.  Id.  At step four, the ALJ found that Brown was unable to

perform any of his past relevant work.  Tr. at 440.  Finally, at the fifth step, the ALJ

found that Brown could perform jobs existing in significant numbers in the national

economy and concluded, therefore, that he was not disabled during the period at issue.

Tr. 440–41.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  This court is not required to review the factual findings and legal

conclusions of the magistrate judge to which the parties have not objected.  See id.  The

recommendation of the magistrate judge carries no presumptive weight, and the

responsibility to make a final determination remains with this court.  Mathews v. Weber,

423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits

"is limited to determining whether the findings of the [Commissioner] are supported by

substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907

F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of

evidence but may be somewhat less than a preponderance."  Id. (internal citations

omitted).  "[I]t is not within the province of a reviewing court to determine the weight of

the evidence, nor is it the court's function to substitute its judgment for that of the

[Commissioner] if his decision is supported by substantial evidence."  Id.

### III.   DISCUSSION

Brown objects to the magistrate judge's R&R, arguing that the ALJ:

(1) committed reversible error in failing to consider the opinion of treating physician Dr.

Marion R. McMillan ("Dr. McMillan"); (2) erred when he rejected all of the opinions of

all of the physicians who treated or examined Brown; (3) afforded improper weight to Dr.

Alfred Jonas's ("Dr. Jonas") testimony; and (4) failed to properly account for Brown's

lack of hand function as determined by objective testing by Mr. Randy L. Adams ("Mr.

Adams").  Pl.'s Objections.  The court will address each of the objections below.

### A.    Failure to Discuss Dr. McMillan's Notes

Brown first argues that the ALJ erred in failing to discuss Dr. McMillan's

opinions.  Pl.'s Objections 1–3.  SSA regulations require that all <u>medical opinions</u> in a

case be considered.  20 C.F.R. § 404.1527(b) (emphasis added).  "Medical opinions are

statements from physicians and psychologists or other acceptable medical sources that

reflect judgments about the nature and severity of [the claimant's] impairment(s),

including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can

still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20

C.F.R. § 416.927.  Medical opinions are evaluated pursuant to the following non-

exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment
> relationship between the physician and the applicant, (3) the supportability
> of the physician's opinion, (4) the consistency of the opinion with the
> record, and (5) whether the physician is a specialist.

<u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 (4th Cir. 2005).  Generally, the ALJ must "give

more weight to the opinion of a source who has examined [the claimant] than to the

opinion of a source who has not examined [the claimant]."  20 C.F.R. § 404.1527(c)(1)

(2012).

The ALJ is also obligated to explain his findings and conclusions on all material

issues of fact, law, or discretion presented.  5 U.S.C. § 557(c)(3)(A) (2012).  "Strict

adherence to this statutorily-imposed obligation is critical to the appellate review

process," and courts have remanded cases where the reasoning for the ALJ's conclusion

"is lacking and therefore presents inadequate information to accommodate a thorough

review."  <u>See v. Wash. Metro. Area Transit Auth.</u>, 36 F.3d 375, 384 (4th Cir. 1994)

(internal citation omitted).  While an ALJ need not set forth his findings in a particular

format, see Stephens v. Heckler, 766 F.2d 284, 287–88 (7th Cir. 1985), a reviewing court

cannot determine if findings are supported by substantial evidence unless the ALJ

explicitly indicates the weight given to all of the relevant evidence.  Gordon v.

Schweiker, 725 F.2d 231, 235–36 (4th Cir. 1984).  "Unless the [ALJ] has analyzed all

evidence and has sufficiently explained the weight he has given to obviously probative

exhibits, to say that his decision is supported by substantial evidence approaches an

abdication of the court's duty to scrutinize the record."  Arnold v. Sec'y of Health, Ed. &

Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a

treating physician) or to discuss the weight given to that opinion will require remand."

Love-Moore v. Colvin, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) affd sub nom.

Moore v. Colvin, 584 F. App'x 155 (4th Cir. 2014).   However, "[i]n some cases, the

failure of an ALJ to explicitly state the weight given to a medical opinion constitutes

harmless error, so long as the weight given to the opinion is discernible from the decision

and any grounds for discounting it are reasonably articulated."  Bryant v. Colvin, 2013

WL 3455736, at *5 (E.D.N.C. July 9, 2013) (unpublished) (citations & quotations

omitted).  "In social security cases, an ALJ's errors are harmless so long as the ALJ's

conclusion is supported by substantial evidence in the record and the claimant could not

reasonably have been prejudiced by the error."  Emrich v. Colvin, 90 F. Supp. 3d 480,

488 (M.D.N.C. 2015); see also Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 101

(4th Cir. Feb. 12, 2015) (finding an ALJ's error to be harmless where it was "highly

unlikely, given the medical evidence of record, that a remand to the agency would change

the Commissioner's finding of non-disability"); Molina v. Astrue, 674 F.3d 1104, 1115

(9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate

nondisability determination." (quotation marks omitted)); Huffman v. Colvin, 2013 WL

4431964, at *4 (M.D.N.C. Aug. 14, 2013) ("[E]rrors are harmless in social security cases

when it is inconceivable that a different administrative conclusion would have been

reached absent the error."); Morgan v. Barnhardt, 2005 WL 1870019, at *5 (4th Cir. Aug.

5, 2005) (unpublished) (holding that where treating physician's opinion regarding

claimant's ability to sit and stand did not "materially contradict" the ALJ's RFC, the

ALJ's failure to discuss the opinion was harmless error).

On July 25, 2007, Dr. McMillan, a pain management specialist, examined Brown

and found that he had an antalgic gait, a positive straight leg raising test on the right,

absent ankle reflexes, and abnormal sensation in the right calf.  Tr. 244–45.  The notes

indicate that Brown was referred to Dr. McMillan "for consideration of advanced

minimally invasive treatment options including endoscopic microdiscectomy."  Tr. 244.

Dr. McMillan's notes state that "[p]ain management consultation by Dr. Michael Grier

with progressive medical management has failed to relieve symptoms or tractable sciatica

pain with continued functional disability."  Id.  Dr. McMillan diagnosed a far-right lateral

disc herniation at L4-5 with right lumbar neuralgia and recommended microdiscectomy

surgery and also notes that "MRI examination documents far right lateral disc herniation

and foraminal compression of nerve root L4-5, anatomically appropriate to explain

symptoms."  Tr. 244–45.  Dr. McMillan recommended an endoscopically assisted

microdiscectomy at the L4-5 level.  Tr. 245.

Here, the ALJ failed to discuss or state the weight given to Dr. McMillan's treatment notes. The magistrate judge found that while the ALJ did not evaluate Dr. McMillan's opinion, Dr. Jonas acknowledged Dr. McMillan's statement that an MRI was consistent with Brown's symptoms during his hearing testimony. Tr. 467; see also Tr. 244, 250. Dr. Jonas found that, contrary to Dr. McMillan's notes, "it was not clear . . . from that MRI report that the findings would have been consistent with the symptoms." Tr. 467. The magistrate judge found that the ALJ's failure to specifically discuss Dr. McMillan's report and his reliance on Dr. Jonas's testimony in making his finding was not in error because Dr. Jonas considered Dr. McMillan's statement. R&R 38 (citing Tr. 426–27, 430, 433, 435–36, 439). The magistrate judge further found that there were some questions as to whether Dr. McMillan was a treating physician because he only saw Brown once. R&R 38 (citing 20 C.F.R. § 404.1527(c)(2)). Thus, the magistrate judge found that there was no reversible error in the ALJ's failure to specifically mention this evidence. Id.

The court agrees with the magistrate judge and finds that the ALJ's failure to discuss Dr. McMillan's notes was harmless. First and foremost, Dr. McMillan is not considered a treating physician. A "[t]reating source means [the claimant's] own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Dr. McMillan only saw Brown on one occasion and did not have an ongoing relationship with Brown; therefore, Dr. McMillan is not considered a treating source. Further, Dr. McMillan's evaluation of the MRI is not considered a medical opinion but rather is

evidence in the record.  See 20 C.F.R. § 416.927 ("Medical opinions are statements from

physicians and psychologists or other acceptable medical sources that reflect judgments

about the nature and severity of [the claimant's] impairment(s), including [the claimant's]

symptoms, diagnosis and prognosis, what [the claimant] can still do despite

impairment(s), and [the claimant's] physical or mental restrictions.").  Dr. McMillan did

not make a judgment about the nature and severity of Brown's impairments but rather

only recognized that an MRI was consistent with his reported symptoms.  Dr. McMillan

did not discuss what Brown could do despite the impairments or Brown's physical or

mental restrictions.

Further, the ALJ conducted an extensive analysis of the opinions of Brown's

treating physicians and other medical evidence in the record.  Importantly, while the MRI

Dr. McMillan discussed clearly predated the July 2007 examination, the ALJ noted much

more recent cervical spine MRI results that showed facet joint hypertrophy but "no other

significant abnormalities." Tr. 611.  Clearly, the ALJ found the more recent MRI results

pertinent to his decision.  Moreover, the ALJ recognized—as stated in Dr. McMillan's

notes—a physical examination that displayed Brown's antalgic gait and considered the

physical examination in making his RFC assessment.  Tr. 428–29.  Based on the entirety

of the record, it is inconceivable that a different administrative conclusion would have

been reached absent the ALJ's failure to explicitly discuss Dr. McMillan's notes.  The

ALJ's conclusion is supported by substantial evidence in the record and the claimant

could not reasonably have been prejudiced by the error.  See, e.g., Love-Moore, 2013 WL

5350870, at *2 ("Therefore, consideration of Dr. Charles's opinion would not have

11

altered the ALJ's conclusion that <u>Love–Moore</u> is not disabled.  Thus, the ALJ's failure to

consider Dr. Charles's opinion was harmless error.").

Therefore, because remand to the ALJ would amount to little more than an empty

exercise, the court finds that the ALJ's failure to consider Dr. McMillan's treatment notes

is harmless error.  <u>See</u> <u>Mickles v. Shalala</u>, 29 F.3d 918, 921 (4th Cir. 1994) (applying

harmless error analysis in Social Security case); <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d

652, 656 (1st Cir. 2000) (holding that a remand is not necessary if it would "amount to no

more than an empty exercise"); <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989)

("No principle of administrative law or common sense requires us to remand a case in

quest of a perfect opinion unless there is reason to believe that the remand might lead to a

different result."); <u>Austin v. Astrue</u>, 2007 WL 3070601, *6 (W.D. Va. Oct.18, 2007)

(holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that

a different administrative conclusion would have been reached absent the error").

### B.    Opinion Evidence of Treating Physicians

In his next objection, Brown argues that the ALJ erred in rejecting all of the

opinions of all of the treating and examining physicians.  Pl.'s Objections 5.  Social

Security regulations require the ALJ to consider all of the medical opinions in a

claimant's case record, as well as the rest of the relevant evidence.  20 C.F.R.

§ 404.1527(c) (2012).  Medical opinions are evaluated pursuant to the following non-

exclusive list:

> (1) whether the physician has examined the applicant, (2) the treatment
> relationship between the physician and the applicant, (3) the supportability
> of the physician's opinion, (4) the consistency of the opinion with the
> record, and (5) whether the physician is a specialist.

Johnson, 434 F.3d at 654.  In general, more weight is given to the opinion of a "source

who has examined [a claimant] than to the opinion of a source who has not," 20 C.F.R. §

404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it

is inconsistent with other substantial evidence, it should be accorded significantly less

weight." Craig, 76 F.3d at 590.  The ALJ must also give specific reasons for the weight

given to a treating physician's medical opinion.  See SSR 96-2p, 1996 WL 374188 (July

2, 1996).

The ALJ is also obligated to explain his findings and conclusions on all material

issues of fact, law, or discretion presented.  5 U.S.C. § 557(c)(3)(A) (2012).  "Strict

adherence to this statutorily-imposed obligation is critical to the appellate review

process," and courts have remanded cases where the reasoning for the ALJ's conclusion

"is lacking and therefore presents inadequate information to accommodate a thorough

review." See, 36 F.3d at 384 (internal citation omitted).  While an ALJ need not set forth

his findings in a particular format, see Stephens, 766 F.2d at 287–88, a reviewing court

cannot determine if findings are supported by substantial evidence unless the ALJ

explicitly indicates the weight given to all of the relevant evidence.  Gordon, 725 F.2d at

235–36.  "Unless the [ALJ] has analyzed all evidence and has sufficiently explained the

weight he has given to obviously probative exhibits, to say that his decision is supported

by substantial evidence approaches an abdication of the court's duty to scrutinize the

record." Arnold, 567 F.2d at 259.

### 1.    Dr. C. David Tollison ("Dr. Tollison")

Dr. Tollison examined Brown on one occasion on August 9, 2010.  Tr. 432.  After

analyzing Dr. Tollison's opinion, the ALJ discounted it because he found that Dr.

13

Tollison, as a one-time examiner, failed to provide any explanation for his opinion that

Brown's condition has persisted since 2006.  Tr. 433–34.  The ALJ further found that Dr.

Tollison could not provide a detailed longitudinal picture of Brown's functioning during

the relevant period.  See 20 C.F.R. § 404.1527(d)(2).  The ALJ found that Dr. Jonas's

opinion should be afforded greater weight because he had access to all of Brown's

medical records.  Tr. 433.  The ALJ also concluded that the two-page medical source

statement prepared by Dr. Tollison contained only summary conclusions and lacked the

requisite level of detail to inform the ALJ's opinion and was therefore not a statement of

mental residual functional capacity.  Tr. 433.  Lastly, the ALJ assessed the record as a

whole, including Brown's longitudinal mental history, activities of daily living, Dr. Brian

Keith's ("Dr. Keith") notes, the state agency reviewing psychologist's conclusions, and

Dr. Jonas's testimony to determine that Brown did not have the marked mental

limitations Dr. Tollison opined.  Tr. 433; see also Tr. 421–23, 470–71, 433–34, 136–42,

364–69, 376 (Brown's daily activities and doctor's notes regarding his mental

impairments).  The ALJ therefore properly considered Dr. Tollison's opinions and his

decision to afford them little weight is supported by substantial evidence.

### 2.    Dr. Stephen F. Worsham ("Dr. Worsham")

Similarly, the ALJ's assessment of Dr. Worsham's opinions in supported by

substantial evidence.  On February 24, 2011, Dr. Worsham, Brown's treating physician,

completed a questionnaire indicating that Brown was unable to work due to his chronic

pain.  Tr. 240–41.  After recognizing Dr. Worsham's lengthy treatment relationship with

Brown, the ALJ analyzed Dr. Worsham's opinion and determined that it was not entitled

to controlling weight.  Tr. 434–35.  Most importantly, the ALJ determined that Dr.

Worsham's opinions were based solely on Brown's subjective complaints and were not supported by objective corroborating positive musculoskeletal or mental status examination findings, concluding that Brown primarily saw Dr. Worsham for medication refills.  Tr. 434; see also Tr. 292–97, 330–31, 370–73, 589–91.  The ALJ further noted that Dr. Worsham's opinion was a pre-prepared form wherein he was required only to circle answer and list diagnoses rather than provide an analysis, recognizing that courts have found such forms to carry limited probative value.  Tr. 240–41.  While the ALJ noted that neither Dr. Worsham nor Dr. Jonas were specialists in orthopedics, the ALJ found Dr. Jonas's testimony more persuasive because he provided specific evidence, diagnostic testing, and physical examinations to support his conclusions while Dr. Worsham provided none.  Tr. 435.  The court agrees with the magistrate judge that the ALJ's decision to afford Dr. Worsham's opinion little weight is supported by substantial evidence.

### 3.     Dr. Michael T. Grier ("Dr. Grier")

Dr. Grier, Brown's pain management specialist, concluded that Brown's pain significantly limits his ability to perform his activities of daily living.  Tr. 621–23.  As the magistrate judge noted, Dr. Grier's opinion was completed almost two years after Brown's last insured date, and the opinion does not indicate whether it applies to the period prior to June 30, 2011.  After evaluating Dr. Grier's opinion, the ALJ afforded it limited weight for numerous reasons.  Tr. 435–36.  The ALJ noted that Dr. Grier's opinion was given on a circle-the-answer form in a conclusory fashion and that his opinion was not consistent with his own treatment notes and the evidence on record.  In so finding, the ALJ provided specific examples of record evidence that was inconsistent

15

with Dr. Grier's opinion.  Tr. 435–36.  Therefore, the court agrees with the magistrate

judge that the ALJ's decision to afford Dr. Grier's opinion little weight is supported by

substantial evidence.

### 4.    Dr. Keith

Dr. Keith is a psychologist who evaluated Brown at the Commissioner's request

on September 8, 2009.  Contrary to Brown's assertions, the ALJ gave "great weight" to

certain of Dr. Keith's opinions, and Dr. Keith's "opinion was the initial predicate in

limiting [Brown] to simple one to [two] step tasks because of pain."  Tr. 438.  Further,

the ALJ relied on Dr. Keith's opinion to the extent it was consistent with the entire body

of the evidence; however, the ALJ gave limited weight to Dr. Keith's opinion with

respect to Brown's social functioning given the progressive nature of his condition and

additional evidence.  Id.  In so holding, the ALJ cited specific evidence in the record,

including Dr. Grier's treatment records and Dr. Jonas's opinion.  Id.  The court finds that

the ALJ's decision to afford a portion of Dr. Keith's opinion limited weight is supported

by substantial evidence.

### 5.    Dr. Carol W. Burnette ("Dr. Burnette")

Lastly, Dr. Burnette, a pain management specialist, examined Brown and opined

that based on his pain and narcotic pain medication, he was "unable to maintain gainful

employment in any capacity."  Tr. 611–13.  The ALJ determined that Dr. Burnette's

conclusion was not a medical opinion but rather an administrative finding reserved for

the Commissioner's determination.  Tr. 436.  The ALJ further found that Dr. Burnette's

opinion was conclusory and did not provide the specific ways in which Brown was

limited because of his impairments.  Id.  Because Dr. Burnette's conclusion did not

16

provide any insight into Brown's limitations and because the records indicated that

Brown's pain management improved his condition tremendously, providing him a stable

pain management regime, the ALJ decided to afford Dr. Burnette's opinion little weight.

Tr. 436–37.  The court finds that the ALJ's decision is supported by substantial evidence.

As thoroughly discussed in the R&R and evidenced by the ALJ's twenty-five

page report, the ALJ conducted a thorough analysis of each treating and examining

physicians' opinions, including the weight afforded to the opinions, conflicting and

supporting evidence within the record, and why he chose to discount the opinions.

Although Brown argues that the ALJ only chose to consider evidence that supported his

decision, the ALJ's report indicates that he examined and considered the entirety of the

medical evidence to reach his conclusion.  Therefore, Brown's second objection fails.

C.      Weight Afforded Dr. Jonas's Opinion

Brown also argues that the ALJ afforded improper weight to Dr. Jonas's

testimony.  Pl.'s Objections 9–12.  Brown specifically argues that the ALJ questioned Dr.

Jonas on Brown's physical impairments rather than his psychiatric conditions, even

though Dr. Jonas is a psychiatrist, and gave Dr. Jonas's opinion controlling weight over

the treating and examining physicians. Id.

As the Agency's own regulations state,

[A] finding that a treating source medical opinion is not well-supported by
medically acceptable clinical and laboratory diagnostic techniques or is
inconsistent with the other substantial evidence in the case record means
only that the opinion is not entitled to "controlling weight," not that the
opinion should be rejected.

SSR 96-2P (S.S.A. July 2, 1996).  In general, more weight is given to the opinion of a

"source who has examined [a claimant] than to the opinion of a source who has not," 20

17

C.F.R. § 404.1527(c)(1), but "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. The ALJ must also give specific reasons for the weight given to a treating physician's medical opinion. See SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations further state that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

As fully set forth in the magistrate judge's R&R, the ALJ properly considered Dr. Jonas's opinions on record evidence. The ALJ may question Dr. Jonas regarding issues that are not within his specialty. The ALJ consistently noted throughout his report that Dr. Jonas was a psychiatrist but was qualified to read medical reports because he received medical training as an M.D. Tr. 436, 435. Further, Brown alleged disability from both mental and physical impairments. It is not feasible to require an ALJ to appoint a medical expert within the particular medical field of each claimed disability. See, e.g., Kenney v. Comm'r of Soc. Sec., 232 F. App'x 183, 187 (3d. Cir. 2007) ("[A] medical expert is not disqualified from testimony because [his] practice specialty does not lie within the area of medicine reflected by the claimant's impairments."); Cole v. Soc. Sec. Admin., 2008 WL 5157919, at *7 (E.D. Pa. Dec. 9, 2008) ("[A] medical expert need not specialize in the field of the alleged disability to testify at the hearing."). Brown does not cite any case law to the contrary.

Most importantly, while the ALJ did afford Dr. Jonas's opinion greater weight than the opinions of Brown's treating physicians, he did not rely solely on Dr. Jonas's

18

opinions in making his decision to afford the treating and examining physician opinions little or less weight.  To the contrary, as set forth in the preceding section, the ALJ cited, among other evidence, Brown's medical records, his reported daily activities, and the opinions of other physicians in weighing the medical opinions.  As set forth above, the weight given to each treating and examining physician's opinion is supported by substantial evidence.  Therefore, the court holds that the ALJ did not afford improper weight to Dr. Jonas's opinion.

**D.    The ALJ's RFC Findings Regarding Brown's Hand Functioning**

Lastly, Brown argues that the ALJ failed to properly account for his lack of hand functioning as determined by Mr. Adams.  Pl.'s Objections 12–15.  Mr. Adams, a vocational evaluator, examined Brown on August 17, 2010 and concluded, after conducting a finger dexterity test, that Brown had very low hand and finger dexterity in both hands and was not a candidate for any type of job that would require him to use his hands and fingers on a repetitive basis or manipulate small parts.  Tr. 188.  Upon prior remand, the court instructed the ALJ to consider Mr. Adams's opinion.  The ALJ gave Mr. Adams's opinion limited weight, finding that the objective evidence did not support his finding.  Specifically, Brown reported that he collected coins, worked on his vehicle, worked around his house, and used the computer.  Tr. 437–38.  Additionally, motor and sensory examinations revealed no deficits and neurologic exams were repeatedly noted to be intact.  See Tr. 248–54, 260–90, 325–28, 368, 455, 592–620.  The court finds that the ALJ's decision to afford Mr. Adams's opinion limited weight is supported by substantial evidence.

Most importantly, even if the ALJ had incorporated the additional manipulative limitations recognized by Dr. Adams in his RFC assessment, the Dictionary of Occupational Titles provides that the occupation of surveillance system monitor—one of the jobs identified by the vocational expert in response to the ALJ's hypothetical— requires no handling or fingering.  DICOT 379.367-010, 1991 WL 673244.  Therefore, to the extent that he ALJ's failure to consider Mr. Adams's findings of additional limitations in the RFC assessment was an error, the court finds the error harmless.  See Tanner, 602 F. App'x 95, 101 (finding an ALJ's error to be harmless where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability").  Therefore, Brown's last objection fails.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's report & recommendation, ECF No. 21, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 30, 2016**
**Charleston, South Carolina**

20